# IN THE COURT OF APPEALS OF IOWA

No. 21-0630
Filed September 22, 2021

**IN THE INTEREST OF C.R. and L.S.,**
**Minor Children,**

**A.R., Mother**,
    Appellant,

**J.S., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Calhoun County, Joseph McCarville,

District Associate Judge.


Both parents separately appeal the termination of their parental rights.

**FATHER'S APPEAL DISMISSED; MOTHER'S APPEAL AFFIRMED.**


Ashley Beisch of Johnson Law Office, Ogden, for appellant mother.

Charles A. Schulte, Sac City, for appellant father.

Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant

Attorney General, for appellee State.

Mary Lauver, Lake City, attorney and guardian ad litem for minor children.


Considered by Tabor, P.J., Greer, J., and Scott, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602-9206

(2021).

**GREER, Judge.**

A mother, A.R., appeals the termination of her parental rights to two children, C.R. (born in 2011) and L.S. (born in 2016).[1]  J.S. is the father of L.S.  His rights to L.S. were terminated in the same proceeding, and he also appeals.  The juvenile court terminated both parents' rights under Iowa Code section 232.116(1)(e) and 232.116(1)(f) (2019).  We review termination-of-parental-rights proceedings de novo.  *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019).

The father requests, though does not qualify for, a delayed appeal. The mother asserts that there was not clear and convincing evidence that she failed to maintain significant and meaningful contact with the children or that they could not be returned to her.  We find the statutory grounds for termination were proved by the State and termination is in the best interests of the children, so we affirm the juvenile court's proper termination of her parental rights.

**I.  Father's Appeal.**

The father's petition on appeal was untimely.  Following the filing of a notice of appeal, a parent has fifteen days to file their appeal.  Iowa R. App. P. 6.201(1)(b). Here, the father filed his notice of appeal on May 10, 2021, and his petition June 3—nine days late.  However, he asks us to grant him a delayed appeal.

Delayed appeals are appropriate in termination cases when the parent clearly intended to appeal, the failure to timely perfect the appeal was outside of the parent's control, and the time of the delay is negligible.  *In re A.B.*, 957 N.W.2d

---

[1] C.R.'s father's rights were terminated on April 26, 2021 by separate order.  He does not appeal.  Because C.R.'s father does not appeal, any reference to "the father" is a reference to L.S.'s father.

280, 292 (Iowa 2021). Here, the father clearly intended to appeal as evidenced by his notice. As in *A.B.*, the attorney attests that the delay was his fault, not the father's. 957 N.W.2d at 289. However, the time here was not negligible. Cases that have granted delayed appeal in parental termination cases have concerned a day or two. *See, e.g.*, *id.* at 293 (allowing delayed appeal when delay was two days); *In re W.M.*, 957 N.W.2d 305, 316–17 (Iowa 2021) (allowing delayed appeal when delay was two days); *In re T.F.*, No. 21-04243, 2021 WL 3076866, at *6 (Iowa Ct. App. July 21, 2021) (allowing delayed appeal when delay was one day); *In re M.B.*, No. 21-0306, 2021 WL 2452056, at *3 (Iowa Ct. App. June 16, 2021) (allowing delayed appeal when delay was one day). Given the expedited nature of these termination cases, nine days is not negligible.

Further, while cases have allowed for delayed appeals when the delay is due to an attorney's tardiness, the supreme court is clear that this is appropriate only when the failure is coupled with some extenuating circumstance. *See A.B.*, 957 N.W.2d at 293 n.4 ("That is not to say an attorney's inadvertent failure to properly calendar the deadline for a petition on appeal will entitle her client to a delayed appeal. Such would effectively write our 'no extensions' provision out of the rules, which we have no intention of doing."); *In re. W.T.*, No. 21-0540, 2021 WL 3076284, at *2 (Iowa Ct. App. July 21, 2021) (noting a delayed appeal is inappropriate when based solely on the attorney's tardiness). In the present case, the father's attorney points to three reasons that should be painted as "extenuating circumstances": an illness in their legal assistant's family, a heavy case-load, and the Memorial Day holiday. All of these reasons represent the daily pressures of an attorney's role, not extenuating circumstances. As no extenuating

circumstances prevented counsel from filing, allowing a delayed appeal would be inappropriate.

As the father's petition on appeal was not timely filed, we dismiss his appeal and reach the merits only on the mother's appeal.[2]

## II. Mother's Appeal.

### A. Facts and Prior Proceedings.

The Iowa Department of Human Services (DHS) became involved with C.R. and L.S. in the summer of 2018 after there were concerns with drug use in the home. C.R. and L.S. lived with L.S.'s father, J.S., for at least a year, during which time their mother dealt with substance abuse and criminal charges. Both children were adjudicated children in need of assistance (CINA) in September. The mother had only supervised contact with the children at that time; however, in October, DHS found that the father had left the children alone with their mother. The children were removed from J.S.'s home and have remained out of either parent's care since that time.

Since the time of removal, the children have lived with various family members and at the time of the termination hearing were not in the same placement. And, an hour and a half drive separates the current homes of these siblings. The relatives in both homes have indicated that these are not permanent placements.

In 2019, the mother was dealing with criminal charges that eventually led to time in prison. Even when she was not incarcerated, however, her use of services

---

[2] Given the record developed over the father's ability to care for L.S. at the present time, his appeal would not have been successful.

and visitation with her children was inconsistent. DHS first recommended termination of parental rights in October of 2019 for both parents. After the mother was released from prison in April 2020, she eventually began seeing her children again. Her visitation with C.R. was more consistent, with the excuse that L.S. was placed farther away.[3] Still, she also did not participate in many of the virtual visits available with L.S.

The mother tested positive for methamphetamine in August 2020 and February and March of 2021. At least one of these positive tests came as a result of using with an individual that DHS first learned about in December of 2020 when they received reports of domestic violence in the relationship. The man appeared to be living with the mother at the time, but the relationship seemed to be over at the time of termination hearing. Still, in the year previous to the hearing, the mother lived in three different houses, making stable housing an issue in the hearing.

Also in February and March, two overnight visits were attempted with the mother and both children. During the first overnight visit, it was discovered that the mother left the children with an unapproved individual while she ran an errand. The visit was terminated. And the drug test taken before the start of this visitation was positive for methamphetamine. At the second overnight visit, an unapproved visitor[4] arrived at the home and walked in without knocking. The mother made him leave and called her caseworker to inform her of the event, and the visit continued. The most recent positive drug test came back the month before the termination

---

[3] The mother does not have a car, making it difficult to get to L.S.
[4] The visitor was the man accused of domestic abuse against the mother, and it was observed that he walked into the home without knocking.

hearing.[5]  The mother and the caseworkers agree that there is a bond between C.R. and his mother, while such a bond does not exist between her and L.S.[6]  The mother was most consistent with visitation in the month leading up to the termination hearing.

This case has been continued previously due to the mother's incarceration and COVID-19.  DHS has identified a potential adoptive home that would allow the children to live together and for C.R. to continue at the same school.

**B. Analysis.**

The mother argues both that the State did not prove the statutory grounds for termination by clear and convincing evidence and that termination is not in the best interests of the children.

1.  Statutory Grounds

The mother's parental rights to both C.R. and L.S. were terminated under Iowa Code section 232.116(1)(e) and (f).  "When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record."  *A.B.*, 815 N.W.2d at 774.  To terminate under paragraph (f), the court has to find:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a [CINA] pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.

---

[5] DHS is additionally concerned about men that the mother has been in relationships with.  In late 2020, she was hospitalized twice from domestic assault.
[6] L.S. refers to the aunt and uncle she lives with as "Mom" and "Dad," and the mother either as "Second Mom" or by her first name.

(4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

It is undisputed that both children are over four years old, have been adjudicated CINA, and have been outside of the mother's physical custody for more than twelve of the last eighteen months. The mother does dispute, however, that there was clear and convincing evidence at the time of termination that the children could not be returned to her custody. She states that apart from the length of her sobriety, she was on the road to regaining custody. Yet, we note the positive drug test the month before the termination hearing.

The statute does not look at the future potential that the child be returned to custody, but at the time of the termination hearing. *See In re A.M.*, 843 N.W.2d 110, 111 (Iowa 2014) (indicating the statutory language relates to the date of the hearing). The mother's recent progress and effort are commendable, but it comes too late. Even the caseworker opined, "That's the most consistent thing about [the mother] is that she's inconsistent." Progress must be evident before the "eve of termination," and the mother tested positive for methamphetamine only a month before the termination hearing. *In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) ("A parent cannot wait until the eve of termination, after the statutory time periods for reunification have expired, to begin to express an interest in parenting.").

Unfortunately, the mother in this case seems to continue to struggle with methamphetamine use as evidenced by two positive tests leading up to the termination proceedings, with the final positive test only the month before. "A parent's methamphetamine use, in itself, creates a dangerous environment for children." *In re J.P.*, No. 19-1633, 2020 WL 110425, at *2 (Iowa Ct. App. Jan. 9,

2020). The short period of sobriety that the mother demonstrated right before the termination is not enough to convince us that future use will not occur. With this in mind, the mother was not able to have the children returned to her at the time of the termination hearing. We find the statutory grounds for termination were proved under section 232.116(1)(f). Next we examine the mother's best-interests-of-the-children argument.

2. Best Interests of the Children.

After the State meets the statutory burden for termination, we consider the child's best interests. We will "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). The best interests cannot be only forward looking, as "[i]t is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination . . . by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *A.M.*, 843 N.W.2d at 112 (quoting *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010)).

We conclude that termination of the mother's rights is in both children's best interests. The children have been out of the mother's care since 2018. She has been in their lives inconsistently since that time. L.S. does not have a strong connection with her mother and, while the relationship with C.R. is stronger, it is not so strong as to overcome the other factors threatening their best interests. Further, the mother has not shown that she can provide either child a safe home free of substance abuse for any length of time. And the State has identified a

potential placement where the children can be together and C.R. can continue in a school he knows.

Having considered the issues raised by the mother, we affirm the termination of the mother's parental rights.

**FATHER'S APPEAL DISMISSED; MOTHER'S APPEAL AFFIRMED.**